UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PEAK HEALTH CENTER, <br> Plaintiff, <br> v. <br> BRANDON DORFMAN, <br> Defendant. | Case No. 19-cv-04145-VKD <br><br> **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND; DENYING ANTI-SLAPP MOTION TO STRIKE WITHOUT PREJUDICE** <br><br> Re: Dkt. Nos. 10, 11 |

Plaintiff Peak Health Center ("Peak Health") filed this action against defendant Brandon Dorfman and Does 1-10[1] on July 18, 2019. Dkt. No. 1. Peak Health subsequently filed an amended complaint as of right on July 30, 2019, asserting the following claims: (1) trade libel; (2) intentional interference with prospective economic advantage; (3) negligent interference with prospective economic advantage; (4) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (5) unfair competition under California Business and Professions Code § 17200 et seq. Dkt. No. 8. This Court has federal question jurisdiction over Peak Health's Lanham Act claim and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). Dkt. No. 8 ¶ 8. The Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332, as Peak Health resides in California, Mr. Dorfman resides in Pennsylvania, and Peak Health asserts an amount in controversy in excess of $75,000. *Id.* ¶¶ 1-2, 9.

Mr. Dorfman now moves to dismiss the amended complaint pursuant to Rules 9(b) and

---

[1] Naming Doe defendants in a federal action is disfavored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If this action proceeds past the pleading stage and information supporting the addition of new defendants arises during discovery, Peak Health may move for leave to amend to name additional defendants.

12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 10. He requests that the Court take judicial notice of certain matters in support of that motion. Dkt. No. 12. Mr. Dorfman also specially moves to strike the amended complaint pursuant to California's Anti-Strategic Litigation Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure § 425.16. Dkt. No. 11.

All named parties have consented to magistrate judge jurisdiction. Dkt. Nos. 5, 9. The Court heard oral argument on Mr. Dorfman's motions on October 22, 2019. Dkt. No. 28. Having considered the parties' briefs and arguments made at the hearing, the Court: (1) grants the motion to dismiss with leave to amend; (2) grants in part and denies in part the request for judicial notice; and (3) denies without prejudice the anti-SLAPP motion to strike.

## I.      BACKGROUND

According to the amended complaint, Peak Health provides plant-based pharmaceuticals and supplements, and it maintains an office in California. Dkt. No. 8 ¶ 1. Peak Health says that one of its principals developed a strain of *Humulus yunnanensis*, a hops plant, as a source of cannabidiol ("CBD"), a substance typically derived from hemp or cannabis and used to treat various medical conditions. *Id.* ¶ 13. Because hemp and cannabis are subject to legal restrictions and social stigma, obtaining CBD from another unrestricted source—such as a legal hops plant— is a noteworthy and potentially valuable achievement. *See id.* Peak Health purports to be the sole source of CBD derived from *Humulus yunnanensis* and sells CBD-based products under various trademarks, including "Kriya" and "ImmunAG." *Id.*

At the time of the events described in the amended complaint, Mr. Dorfman was the editor-in-chief and a writer for PotNetwork Holdings, Inc. ("PotNetwork"). *Id.* ¶ 3. PotNetwork produces and distributes cannabis and hemp products (including CBD products) and also publishes news concerning the cannabis and hemp industries on its website. *Id.* In early 2019, Mr. Dorfman contacted Peak Health principal Bomi Joseph to ask questions for an article Mr. Dorfman was writing. *Id.* ¶ 14. Mr. Dorfman questioned Mr. Joseph about his background and the origin and source of the CBD used in Peak Health's products. *Id.* Peak Health describes Mr. Dorfman's demeanor during the questioning as demonstrating "disdain and animus towards Mr.

Joseph." *Id.* ¶ 15. After the conversation between Mr. Dorfman and Mr. Joseph, Peak Health says that its public relations agency provided Mr. Dorfman with documents constituting "proof" that Peak Health's CBD originated from *Humulus yunnanensis* plants grown in India, as well as other documents reflecting laboratory test results supporting Peak Health's claims and Mr. Joseph's patent filings for inventions related to *Humulus yunnanensis*. *Id.* ¶¶ 14, 16.

On February 22, 2019, Mr. Dorfman published an article on the PotNetwork website entitled, "*A PotNetwork News investigative report: Bomi Joseph's 'hops-derived' CBD was a world-changing cannabis alternative fought over by Isodiol and Medical Marijuana, Inc. But he lied about his discovery—and his identity*" ("the article"), which is attached as Exhibit A to the amended complaint. *Id.* ¶ 4. The article asserts that Peak Health and Mr. Joseph's claims about Peak Health's CBD products are inaccurate and fraudulent. *Id.* ¶ 18; Dkt. No. 12-1, Ex. 1[2] at 3, 7, 11–12. The article also asserts that Peak Health's "*Humulus kriya*" hops plant does not exist.[3] Dkt. No. 12-1, Ex. 1 at 5. The article also includes statements about Mr. Joseph personally: that his real name is Moses Sunith Prasad Joseph, that his alleged research publications about *Humulus kriya* and CBD were plagiarized from others' legitimate peer-reviewed publications, that he is a convicted felon who served prison time for defrauding various banks of $20 million in the early 2000s, and that he pled guilty in January 2019 to using a false name on a passport application. *Id.* at 2–3, 7–8, 10–12.

Peak Health says that Mr. Dorfman's article is willfully false and libelous. Specifically, Peak Health identifies the following statements in the article as false:

1. "The discovery of cannabidiol from *Humulus kriya* is a fraudulent one, based on plagiarized research and outright deception."

2. "Mr. Joseph claimed to have found the world's first alternative source of highly-

<hr>

[2] The Court cites to the judicially noticed version of the article. *See infra* Section III.A.

[3] Specifically, the article states: "The designation *Humulus kriya* itself is a falsehood . . . . The correct writing would be Humulus yuannenis [sp] var. 'Kriya,' but only if the variety is registered officially can one add 'var. Kriya.' . . . .[W]hen Mr. Joseph wrote *Humulus kriya*, he mislead[s] the public, as his variety is neither a species and very probably not a registered variety." Dkt. No. 12-1, Ex. 1 at 5.

United States District Court
Northern District of California

bioactive CBD through his organization, Peak Health Center in Los Gatos,
California, deceit that garnered him favorable press, speaking engagements, and
financial gain. In fact, based on his plagiarized research and dubious claims, Mr.
Joseph secured himself deals with two publicly-traded companies in the cannabis
sector, Isodiol and Medical Marijuana Inc."

3. "This time around [Mr. Joseph] may very well have stolen from little old ladies, or
the sick and injured—from anyone who purchased ImmunAg or Real Scientific
Humulus Oil or one of its derivatives in hopes of curing some pain."

Dkt. No. 8 ¶ 20. Peak Health also says that Mr. Dorfman acted maliciously or with reckless
disregard for the truth in quoting Dr. Volker Christoffel, one of the people whose work Mr. Joseph
allegedly plagiarized, with respect to the following statements:

4. "'The whole story with CBD from hop is insane,' Dr. Christoffel told PotNetwork
via email. 'By the phylogenetic relatedness it MIGHT be possible, that some hop
varieties may have genes and express i.e., form cannabinoids—the biochemical
pathways are not so different and there is a theoretical possibility I would not
exclude a priori. BUT these are definitively only traces.'"

5. "Point blank, Dr. Christoffel stated that hops, or Humulus kriya, does not have
enough traces of CBD to make it a viable product."

6. "'There is nothing, nothing worth,' [Dr. Christoffel] continued. 'It is just
marketing to drive their shares.'"

7. "And as Dr. Christoffel told PotNetwork News via email, the idea of bioactivity
sold by Mr. Joseph would seem to be a canard."

Id. ¶ 21. Peak Health says that Mr. Dorfman's reliance on Dr. Christoffel was reckless because
Dr. Christoffel never performed or reviewed any kind of chemical analysis of Peak Health's
Humulus yunnanensis-derived CBD. Id. ¶ 22. In fact, Peak Health says, Dr. Christoffel's
reference to "Humulus kriya" "is nonsensical, as there is no such product or plant." Id. Moreover,
Peak Health says, the article fails to disclose that Dr. Christoffel is a managing director of yet
another cannabis-based pharmaceutical company that competes with Peak Health and is therefore

4

not an independent expert as the article suggests. *Id.* ¶ 24.

Peak Health says that the article was intended to harm its commercial interests and that Mr. Dorfman's purpose in publishing it was commercial, not journalistic. *Id.* ¶ 26. Because of the article, Peak Health says it suffered harm to its reputation and lost business opportunities worth at least $10 million. *Id.* ¶¶ 25, 31, 37.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). A court may take notice of public records, but not of disputed facts stated in public records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). In addition, a court may take

judicial notice of a fact not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction, or readily can be determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

### B. Rule 9(b)

Rule 9(b) requires that allegations of fraud be stated with particularity. Specifically, averments of fraud must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When an "entire claim within a complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107. A motion to dismiss a complaint under Rule 9(b) for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### C. Anti-SLAPP Motion to Strike

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (quotation marks and citation omitted). California's anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims asserted under either diversity jurisdiction or supplemental jurisdiction. *Jen v. City & Cty. of San Francisco*, No. 15-CV-03834-HSG, 2016 WL 3669985, at *11 (N.D. Cal. July 11, 2016). The anti-SLAPP statute does not apply to claims asserted under federal law. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

### III.    MOTION TO DISMISS

#### A.    Request for Judicial Notice

Mr. Dorfman asks the Court to take judicial notice of the following documents: (1) another printout of the article; (2) a March 19, 2018 press release from Peak Health; (3) a June 14, 2018 press release from Peak Health; (4) a February 13, 2019 press release from Peak Health; (5) various Internet articles concerning Peak Health and Mr. Joseph; (6) the transcript of the January 22, 2019 change of plea hearing in the criminal passport case against Mr. Joseph; (7) an unpublished California Court of Appeal, Sixth District opinion on Mr. Joseph's appeal of his 2008 conviction and sentencing; (8) Mr. Joseph's sentencing memorandum in the passport case; (9) the judgment against Mr. Joseph in the passport case; (10) excerpts from the transcript of the May 28, 2019 sentencing in the passport case; (11) Mr. Joseph's complaint against Mr. Dorfman, filed in the Superior Court for the County of Los Angeles; and (12) Mr. Joseph's dismissal of the state court action.  Dkt. No. 12.

Peak Health objects to the Court taking judicial notice of documents 1, 2, 3, 4, 5, 8, and 9 on the basis that the Court has no authority to judicially notice those materials and that they are hearsay.  Dkt. No. 22.  Peak Health's separately filed objections to Mr. Dorfman's request for judicial notice do not comply with Civil Local Rule 7-3(a), which requires an opposing party to include evidentiary and procedural objections in its opposition brief.  Accordingly, the Court does not consider Peak Health's separately filed objections.  *See Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1103–04 (N.D. Cal. 2017).

Nevertheless, the Court finds that it need not rely on the documents for which Mr. Dorfman requests notice in order to decide the motion to dismiss and anti-SLAPP motion to strike. Accordingly, the Court denies Mr. Dorfman's request for judicial notice with the exception of Exhibit 1, which is a copy of the article with improved formatting that is easier to read than the copy attached to and incorporated in the amended complaint.  There appears to be no substantive difference between the text of two copies, so the Court will refer to the one that is easier to read.

**B.    Rule 12(b)(6)**

      **1.    Claims 1, 2, and 3 (trade libel, intentional and negligent interference with prospective economic advantage)**

Peak Health asserts claims for trade libel and for intentional and negligent interference with prospective economic advantage.

Trade libel is "an intentional disparagement of the quality of property, which results in pecuniary damage." *AlterG, Inc. v.* Boost *Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019) (quoting *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988)) . To state a claim for trade libel, a plaintiff must allege: (1) who made the statements, (2) to whom the statements were made, (3) the time and place of publication, and (4) the substance of the statements.  *Id.*; *First Adv. Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008).

To state a claim for intentional interference with prospective business advantage under California law, a plaintiff must allege: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant.  *AlterG*, 388 F. Supp. 3d at 1151 (citing *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)).  A claim for negligent interference with prospective business advantage requires the same allegations, except a plaintiff must allege negligent (rather than intentional) acts designed to disrupt the economic relationship.  *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 581 (N.D. Cal. 1999).  In addition, for both intentional and negligent interference, the plaintiff must plead facts showing that the defendant engaged in conduct that was wrongful "by some legal measure other than the fact of interference itself."  *Id.*; *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013) (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)) (internal quotation marks omitted).  Courts have made clear that "[t]he law precludes recovery for overly speculative expectancies by initially requiring proof" that it is "reasonably probable that the prospective economic advantage would have been realized but for defendant's

interference." *AlterG*, 388 F. Supp. 3d at 1151 (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996)) (internal quotation marks omitted).

Claims for trade libel and interference with prospective economic advantage require pleading of special damages. *See Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1989) ("[A] cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.") (citation omitted). The plaintiff must "identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004). Similarly, a plaintiff claiming interference with prospective economic advantage must plead a business relationship with a specific third party containing "the probability of future economic benefit to the plaintiff." *Piping Rock*, 946 F. Supp. 2d at 980 (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)) (internal quotation marks omitted); *see also AlterG*, 388 F. Supp. 3d at 1151–52.

Here, Mr. Dorfman contends that Peak Health fails to allege specific facts establishing harm in the form of lost business or disrupted business relationships. Dkt. No. 10 at 18–19. Peak Health does not point to any allegations in the amended complaint that satisfy these pleading requirements. Dkt. No. 23 at 10–11. Instead, Peak Health argues that a claim for *libel per se* does not require an allegation of special damages. *Id.* at 10–11 (citing *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964); *Rosenberg v. J.C. Penney Co.*, 30 Cal. App. 2d 609, 612 (1939); *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 381, 385 (1986)). While that may be so, Peak Health has chosen to pursue a claim for trade libel in its amended complaint, not libel per se—a distinction recognized in the very cases on which Peak Health relies. *Erlich*, 225 Cal. App. 2d at 73 ("However, as we have pointed out, plaintiff elected to proceed against Etner solely on the theory of trade libel. . . . While, as we have pointed out above, general damages are presumed in a libel of a businessman, this is not so in action for trade libel."); *Barnes-Hind*, 181 Cal. App. 3d at 382 (distinguishing between trade libel as the disparagement of property and libel per se as the disparagement of a businessperson distinct from the quality of his or her goods). Peak Health does not respond to Mr. Dorfman's argument that Peak Health has failed to state a claim for interference with prospective economic advantage.

United States District Court
Northern District of California

Peak Health's amended complaint does not identify any specific customers or business transactions that Peak Health lost as the result of the article's publication.  Instead, Peak Health relies on general allegations of "loss of business opportunities" with unidentified "existing and potential clients and customers" and "business co-venturers."  Dkt. No. 8 ¶¶ 25, 31, 35-37, 43.  Accordingly, the Court concludes that Peak Health fails to state a claim for trade libel and for intentional and negligent interference with prospective economic advantage.

### 2.    Claim 4 (Lanham Act unfair competition)

Peak Health also asserts a claim for violation of the Lanham Act.  The Lanham Act, 15 U.S.C. § 1125(a)(1), prohibits both false association and false advertising.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).  It is not clear whether Peak Health intends to assert a claim for false association under § 1125(a)(1)(A) or false advertising under § 1125(a)(1)(B).  Regardless, Peak Health fails to state a claim with respect to either false association or false advertising.

#### a.    False association

To establish a claim for false association under § 1125(a)(1)(A), a plaintiff must show that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question.  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980)).

Mr. Dorfman contends that nothing in the amended complaint suggests that his article misrepresents the identity of the manufacturer of Peak Health's CBD products.  Dkt. No. 10 at 20.  Peak Health provides no meaningful response.  *See* Dkt. No. 23 at 13.  The Court agrees with Mr. Dorfman that Peak Health fails to state a claim of false association under the Lanham Act.

#### b.    False advertising

To establish a claim for false advertising under § 1125(a)(1)(B), a plaintiff must show (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's

10

product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014), *as amended* (Mar. 11, 2014) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). The Ninth Circuit has explained that a "commercial advertising or promotion" within the meaning of § 1125(a)(1)(B) requires the following:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

Mr. Dorfman argues that the article is not commercial advertising or promotion, and consequently Peak Health fails to state a claim for false advertising. Peak Health responds that Mr. Dorfman's then-employer, PotNetwork, is a competitor of Peak Health and had an economic incentive to cast Peak Health and its products in a negative light, and for this reason the article should be considered commercial speech within the scope of § 1125(a)(1)(B). *See* Dkt. No. 23 at 13; Dkt. No. 8 ¶¶ 4, 17, 26.

The parties focus on the first element of the *Coastal Abstract* test: whether the article qualifies as commercial speech. "The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'" *Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)). The Supreme Court has relied on three factors to determine whether statements constitute commercial speech: (i) whether they were in an advertising format, (ii) whether they referred to a specific product, and (iii) economic motivation for publication. *Bolger v. Youngs Drug Prods. Corp.*, 463

U.S. 60, 66–68 (1983); *Assoc. of Nat'l Advertisers, Inc. v. Lungren*, 44 F.3d 726, 728 (9th Cir. 1994) (outlining the *Bolger* factors).  A determination of whether speech is commercial should rest on "the commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech." *Bolger*, 463 U.S. at 64 (internal quotation marks omitted).  Courts have repeatedly cautioned that commercial speech should "not be defined too broadly lest speech deserving of greater constitutional protection be inadvertently suppressed." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 579 (1980) (Stevens, J., concurring); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 961 (9th Cir. 2012) (quoting concurrence).

On its face, the article does not appear to be an advertisement or promotion.  It is presented in a news format and purports to be an "investigative report."   While the article refers to Peak Health's CBD products, it contains nothing that can plausibly be characterized as advertising or promoting PotNetwork's own products (or anyone else's).  Peak Health's allegations of a competitive relationship between PotNetwork and Peak Health and the economic incentives that may arise from that relationship are insufficient to support its characterization of the article as a commercial advertising or promotion without more.  *Bolger*, 463 U.S. at 67 (holding that no single factor, even an economic motive, is enough to render speech commercial); *see also Allen v. Ghoulish Gallery*, No. 06cv371 NLS, 2007 WL 4207329, at *6 (S.D. Cal. Nov. 20, 2007) (declining to consider plaintiff's Lanham Act false advertising claim predicated on disparaging remarks "because such remarks about a competitor do not constitute commercial advertising or promotion").  Accordingly, the Court finds that Peak Health fails to state a claim for false advertising under the Lanham Act.

### 3.    Claim 5 (section 17200 unfair competition)

Finally, Peak Health asserts a claim for violation of California Business and Professions Code § 17200.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  The amended complaint does not specify the nature of Mr. Dorfman's alleged violation of this statute.  Dkt. No. 8 ¶¶ 51-54.  Mr. Dorfman argues that Peak Health fails to state a claim as to any of the three possible bases for a claim of

unfair competition. Dkt. No. 10 at 24–25. Peak Health responds only that the amended complaint is directed to the "unlawful" prong of section 17200. Dkt. No. 23 at 13–14. The Court thus considers only whether Peak Health states a claim that Mr. Dorfman engaged in an "unlawful" business act or practice.

The "unlawful" prong of California's unfair competition statute "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, No. 16-cv-02560-SI, 2016 WL 5815311, at *4 (N.D. Cal. Oct. 5, 2016) (internal quotations omitted). Thus, where a plaintiff "has not pled sufficient facts to survive a motion to dismiss with respect to its [underlying claim], it has not pled sufficient facts to meet the unlawful prong of its [unfair competition claim]." *Id.* at *5.

Because Peak Health states no other claim for relief in the amended complaint, it also fails to state a claim of unlawful business act or practice under section 17200.

### C. Mr. Dorfman's First Amendment Defense

Mr. Dorfman argues that the entire article is protected speech under the First Amendment and that, as a matter of law, none of the seven statements in the amended complaint may be challenged via state law claims for trade libel, intentional or negligent interference with prospective economic advantage, or unfair competition. Dkt. No. 10 at 12–16.

The First Amendment limits California state law claims "whose gravamen is the alleged injurious falsehood of a statement." *Films of Distinction Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (internal quotation marks and citations omitted); *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042–43, 1045 (1986) (holding that plaintiffs cannot avoid First Amendment limitations by "creative pleading[s]" that "affix a label other than 'defamation' to injurious falsehood claims"). Claims which are similar to defamation, such as trade libel and tortious interference with contractual or prospective relationships, "are subject to the same [F]irst [A]mendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990); *see also Gardner*, 563 F.3d at 992 (applying *Unelko*'s holding to actions for intentional interference with economic relationships and for prospective economic

advantage); *Med. Lab Mgmt. Consultants v. ABC*, 306 F.3d 806, 821 (9th Cir. 2002) (holding that tortious interference causes of action are subject to First Amendment requirements); *Films of Distinction*, 12 F. Supp. 3d. at 1082 (dismissing trade libel claims because disputed statements were opinions protected under the First Amendment).

### 1. Statements of opinion containing provably false factual connotations

The First Amendment protects statements of opinion on matters of public concern that do not contain a provably false factual connotation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). The Ninth Circuit has adopted a three-part test for assessing whether allegedly defamatory statements imply an assertion of objective fact and therefore do not receive First Amendment protection: "(1) whether the general tenor of the entire work negates the impression that the defendant [is] asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Gardner*, 563 F.3d at 987 (citing *Unelko*, 912 F.3d at 1053). Although neither party attempts to apply this test here, the Court will do so.

First, the general tenor of the article is that of an exposé: it is cast as an "investigative report" "based on an in-depth review of Mr. Joseph's research, a trove of confidential documents, and interviews with people familiar with the events . . . ." Dkt. No. 12-1, Ex. 1 at 1, 2. As a purported news article and not an "op-ed," the article's overall tone does not negate the impression that it asserts objective facts. This consideration weighs against finding First Amendment protection.

Second, Mr. Dorfman uses figurative or hyperbolic language throughout the article. For example, he describes one of Mr. Joseph's purported collaborators, Donish Cushing, as "a ghost," because he does not appear in social media or Internet searches, and because "it's hard to find anyone who has met the man." *Id.* at 3. One of the seven statements that Peak Health challenges—that Mr. Joseph "may very well have stolen from little old ladies, or the sick and injured" plays off of the preceding quote from Mr. Joseph's criminal defense attorney that Mr. Joseph did not "[take] money from little old ladies." *Id.* at 12. Mr. Dorfman also refers to Mr. Joseph's "world-changing" hops-derived CBD and the related "media circus" in "industry rags."

14

1   *Id.* at 1, 4.  Many of the quotes Mr. Dorfman attributes to Dr. Christoffel also include colorful

2   language: "This is total bullshit"; "The whole story with CBD from hop is insane"; "1984 is not

3   far away."  *Id.* at 1, 3, 12.  Mr. Dorfman's use of this kind of figurative and hyperbolic language

4   throughout the article weighs in favor of finding First Amendment protection.

5          Third, read in context, some of the challenged statements are specific to Peak Health's

6   claims that its products contain CBD derived from a particular variety of hops plant: *Humulus*

7   *kriya*.  Other statements criticize Peak Health's or Mr. Joseph's basis for assessing the efficacy of

8   CBD derived from such plants.  Yet other statements dispute the idea that it is possible to derive

9   any commercially viable quantity of CBD from any variety of hops plant.  Some of these

10  statements are more susceptible of being proved true or false than others.  For example, whether

11  the CBD in Peak Health's products comes from a hops plant, or specifically a hops plant called

12  *Humulus kriya*, appears to be an assertion of fact capable of being proved true or false.  This

13  weighs against finding First Amendment protection for such statements.  Other statements are not

14  susceptible to being proved true or false, such as the challenged statement attributed to Dr.

15  Christoffel that "[t]here is nothing, nothing worth . . . .  It is just marketing to drive their shares."

16  This weighs in favor of finding First Amendment protection for such statements.

17              **2.      Conclusions based on facts presented to the reader**

18         A statement of opinion which presents the facts upon which it is based does not imply a

19  false assertion of fact, and it is therefore entitled to full constitutional protection.  *Partington v.*

20  *Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  "A statement of opinion based on fully disclosed

21  facts can be punished only if the stated facts themselves are false and demeaning."  *Standing*

22  *Comm. on Discipline of U.S. Dist. Court for the Central Dist. of Cal. v. Yagman*, 55 F.3d 1430,

23  1439 (9th Cir. 1995).  Mr. Dorfman argues that the seven challenged statements are entitled to

24  First Amendment protection because those statements reflect either his opinions or his

25  interpretations of facts that are detailed in the article itself, such that readers of the article are free

26  to interpret the facts differently.  Dkt. No. 10 at 12–13.  He argues that where a speaker outlines

27  the factual basis for his conclusions, the statement of the conclusion must receive First

28  Amendment protection.  Mr. Dorfman principally relies on three cases, each of which the Court

15

finds largely distinguishable.

In *Partington v. Bugliosi*, the plaintiff sued for statements made in a movie and book that allegedly portrayed him as an incompetent attorney. 56 F.3d 1147. Applying the *Unelko* test, the Ninth Circuit found that the contested statements did not imply an assertion of objective fact. The court held that where an author fairly describes the general events involved and offers his personal perspective about some of the ambiguities and disputed facts, he offers an opinion that generally receives protection under the First Amendment. *Id.* at 1153–54. The Ninth Circuit observed that assessments of a lawyer's trial performance are inherently subjective and that the defendant could only be said to have expressed his opinion of the plaintiff's performance after having outlined all the facts upon which that conclusion was based. *Id.* at 1256–57. Here, Mr. Dorfman disclosed the facts on which he based his assertion that Peak Health's hops-derived CBD is a sham: Mr. Joseph's history of plagiarism, attempts to assert new identities, criminal fraud record, and purchases of large quantities of CBD despite allegedly possessing the ability to produce that CBD from hops, as well as statements from scientists concluding that hops-derived CBD is unsubstantiated and not credible. However, his conclusion is not a statement of subjective opinion or interpretation, like an assessment of an attorney's performance; it is an assertion of fact based on other asserted facts.

In *Gardner v. Martino*, the plaintiffs sued a radio talk show host for stating on air that the plaintiffs lied to one of their customers. 563 F.3d at 985. The Ninth Circuit found that the host's statements concerning the plaintiffs' veracity—made *after* the customer outlined her dispute with the plaintiffs—were not statements of fact. *Id.* at 988. The court observed that the radio talk show program included drama, hyperbolic language, an opinionated and arrogant host, and heated controversy, which lowered the audience's expectations that it would hear objective facts. *Id.* The Ninth Circuit concluded that, in this context, the host reasonably relied on the customer's statements when he expressed the opinion that the plaintiffs had lied. Here, by contrast, the article purports to be an "investigative report" based on extensive research. While the article includes some provocative language, it can hardly be compared to a radio talk show host's off-the-cuff assessment that the *Gardner* plaintiffs had lied to a complaining customer.

Finally, in *Franklin v. Dynamic Details, Inc.*, the plaintiffs claimed that the defendant sent three defamatory emails to the plaintiffs' business partners describing the plaintiffs' theft of copyrighted material and plagiarized data. 116 Cal. App. 4th 375 (2004). The California Court of Appeals found those statements to be rhetorical, hyperbolic opinion following the defendant's disclosure of the facts on which defendant based that opinion. *Id.* at 387–90. *Franklin* is instructive as to the article's statements about Mr. Joseph's plagiarism, as those statements may be said to be based on some degree of subjectivity. However, only some of the statements Peak Health challenges refer to plagiarism.

Considering the full context of the article and its publication, the Court is not persuaded that the First Amendment protects all seven challenged statements. Altogether, the *Unelko* factors weigh in favor of finding First Amendment protection only as to challenged statements 3, 6, and 7, which reflect hyperbolic language not immediately susceptible to being proven true or false. Statements 1, 2, 4, and 5, which principally concern whether Peak Health's products actually contain CBD derived from a hops plant, are capable of being proven true or false and therefore are not entitled to First Amendment protection.

### D.     Rule 9(b)

Mr. Dorfman argues that the entire complaint sounds in fraud because all claims for relief depend on Peak Health's allegation that he intentionally made statements he knew to be false or inadequately supported, and therefore all of Peak Health's claims must be pled with particularity. Dkt. No. 10 at 3 (citing *Vess*, 317 F.3d at 1106). Specifically, Mr. Dorfman contends that Peak Health fails to allege why the seven challenged statements are false. Peak Health does not address this argument. *See* Dkt. No. 23.

The Court agrees with Mr. Dorfman. The same factual allegations underly all of Peak Health's claims. The gravamen of those claims is that Mr. Dorfman made false or misleading statements concerning Peak Health's products and the origin of the CBD in those products, and that he did so knowingly or, in some instances, with reckless disregard for the truth. Dkt. No. 8 ¶¶ 18-24. These claims sound in fraud and must meet the heightened pleading standard of Rule 9(b). *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017–20 (N.D. Cal.

2012). In other words, Peak Health must plead "the who, what, when, where, and how" of the fraud. *Vess*, 317 F.3d at 1106.

Peak Health alleges that Mr. Dorfman (who) wrote and published the article containing what Peak Health contends are false or misleading statements (what) on PotNetwork's website (where) on February 22, 2019 (when). *Id.* ¶¶ 14-25; Dkt. No. 12-1, Ex. 1 at 1. However, Peak Health does not plead facts sufficient to plausibly support its claims that all of the statements are false or misleading. With respect to the statements from Dr. Christoffel, Peak Health alleges only that those statements are unreliable because Dr. Christoffel did not test Peak Health's products himself and because Dr. Christoffel runs a business that competes with Peak Health. But Peak Health does not plead *facts* from which it can be inferred that the CBD in its products came from a specific hops plant. At most, Peak Health alleges that its public relations agency provided "proof" of its CBD-related claims to Mr. Dorfman, but it does not actually say why or how the article's statements are wrong. Dkt. No. 8 ¶¶ 14, 16.

Because Peak Health does not plead facts that explain why the challenged statements are false, it fails to satisfy the Rule 9(b) heightened pleading requirement. *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2014 WL 5812294, at *3–4, 5 (N.D. Cal. Nov. 7, 2014) (dismissing all claims based on unified course of fraudulent conduct, including Lanham Act false advertising, because plaintiff failed to plead facts as to what statements were alleged to be false and why, and therefore the complaint failed to meet Rule 9(b) heightened pleading requirements).

### E. Leave to Amend

If the Court determines that claims in a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the

allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

On the present record, the Court cannot conclude that some or all of the deficiencies described above could not be cured by amendment, and for this reason the Court will afford Peak Health leave to amend. Peak Health may amend its complaint to address the deficiencies described in this order by pleading specific facts to support its claims for trade libel, intentional and negligent interference with prospective economic advantage, false advertising under the Lanham Act, and unlawful business act or practice under section 17200, including but not limited to:

1) Facts concerning specific customers or business transactions Peak Health lost as the result of the article's publication;

2) Facts from which it can be inferred that the article was a commercial advertisement or promotion within the meaning of the Lanham Act;

3) All statements that Peak Health challenges as false or misleading;

4) Facts from which it can be inferred that the challenged statements in the article are false or misleading.

Peak Health may not amend its complaint to add new claims (e.g., a claim for libel per se) or additional parties, unless it first seeks and is granted leave of Court to do so. Fed. R. Civ. P. 15(a)(2).

## IV. ANTI-SLAPP MOTION TO STRIKE

Mr. Dorfman moves to strike Peak Health's state law claims (claims 1, 2, 3, and 5) pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16, on the ground that those claims arise from acts taken in furtherance of his right of petition and free speech under the U.S. and California constitutions. Dkt. No. 11.

Although a defendant sued in federal court may bring an anti-SLAPP motion to strike state law claims asserted against him and may be entitled to attorneys' fees and costs if he prevails, the

Ninth Circuit has cautioned against the application of procedural state laws if such application "would result in a direct collision with a Federal Rule of Civil Procedure." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845–46 (9th Cir. 2001)); *see also Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *9 (N.D. Cal. June 15, 2011) (finding that striking plaintiff's initial complaint where leave to amend was not clearly futile would directly collide with Rule 15's liberal amendment policy). Specifically, the Ninth Circuit has held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *See Verizon*, 377 F.3d at 1091. Although Peak Health has already amended its complaint once before (Dkt. No. 8), this is the first occasion on which the Court has been asked to adjudicate the sufficiency of its pleading. The Court therefore finds that striking claims 1, 2, 3 and 5 of the FAC without leave to amend as Mr. Dorfman advocates would "directly collide" with Rule 15's liberal amendment policy. *See id.*; *Art of Living*, 2011 WL 2441898, at *9.

In addition, the anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16. If a district court finally dismisses a claim without leave to amend, the court ordinarily must proceed to consider an anti-SLAPP defendant's claim for attorneys' fees and costs. *See Collins v. Allstate Indemnity Co.*, 428 F. App'x 688, 690 (9th Cir. 2011) (finding district court erred in dismissing anti-SLAPP motion as moot after dismissing complaint under Rule 12(b)(6) without leave to amend); *ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441, 445–46 (9th Cir. 2017) ("[I]f the district court grants the anti-SLAPP motion, it should consider whether attorney's fees are proper and it should do so even if it also grants a motion to dismiss."); *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) (proceeding to anti-SLAPP analysis "[b]ecause the issue of attorney fees and costs is not rendered moot by a dismissal"). However, because the Court will afford Peak Health leave to amend its state law claims, the Court will not decide whether Mr. Dorfman is entitled to attorneys' fees and costs at this time, as such an award in these circumstances would be inconsistent with Rule 15's liberal

amendment policy. *See Verizon*, 377 F.3d at 1091; *Art of Living*, 2011 WL 2441898, at *9.

Accordingly, the Court denies Mr. Dorfman's anti-SLAPP motion to strike and request for fees and costs without prejudice at this time.[4] Mr. Dorfman may renew his motion if Peak Health includes amended state law claims in its second amended complaint. *See Verizon*, 377 F.3d at 1091 ("If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants."); *Version2 Tech., Inc. v. NeilMed Pharms., Inc.*, No. 16-cv-04720-LB, 2016 WL 6611015, at *8 (N.D. Cal. Nov. 9, 2016) (denying anti-SLAPP motion without prejudice to renewing it or to raise a new anti-SLAPP motion, depending on the content of the amended complaint); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1231 n.1 (N.D. Cal. 2014) (declining to address merits of defendant's anti-SLAPP motion because complaint was dismissed with leave to amend, but permitting defendant to re-raise the motion after time for pleadings passed or if he otherwise "prevail[ed]"); *Art of the Living Found.*, 2011 WL 2441898, at *9 (declining to reach defendants' anti-SLAPP motion in light of dismissal with leave to amend, and permitted defendants to re-raise anti-SLAPP arguments in opposition to any amended complaint).

## V.      CONCLUSION

For the foregoing reasons, the Court (1) grants Mr. Dorfman's motion to dismiss with leave to amend consistent with the instructions in section III.E above; (2) grants in part and denies in part Mr. Dorfman's request for judicial notice; and (3) denies without prejudice Mr. Dorfman's anti-SLAPP motion to strike. Peak Health may file a second amended complaint no later than **November 26, 2019**.

///

///

///

---

[4] Mr. Dorfman objects to the declaration of Peak Health's director, Daniela Barahona, submitted in support of its oppositions to the motion to dismiss and the anti-SLAPP motion to strike. Dkt. No. 25 at 2. The Court sustains the objection and does not consider the Barahona declaration, because (1) it may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion without converting the motion to one for summary judgment under Rule 56, and (2) Mr. Dorfman's anti-SLAPP motion is based solely on legal deficiencies and therefore Peak Health was not required to present prima facie evidence supporting its claims. Fed. R. Civ. P. 12(d); *Planned Parenthood*, 890 F.3d at 833.

**IT IS SO ORDERED.**

Dated: November 12, 2019

_____
VIRGINIA K. DEMARCHI
United States Magistrate Judge