UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PEAK HEALTH CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>BRANDON DORFMAN,<br><br>    Defendant. | Case No.  19-cv-04145-VKD<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT; GRANTING ANTI-SLAPP MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 44, 45 |

    With the Court's leave, on November 26, 2019, plaintiff Peak Health Center ("Peak Health") filed a second amended complaint ("SAC") against defendant Brandon Dorfman for the following: (1) trade libel; (2) intentional interference with prospective economic advantage; and (3) negligent interference with prospective economic advantage.  Dkt. No. 37.  This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.  *Id.* ¶¶ 1-2, 9.

    Mr. Dorfman now moves to dismiss the SAC pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and asks the Court to take judicial notice of certain materials in support of that motion.  Dkt. Nos. 44, 46.  Mr. Dorfman also specially moves to strike the SAC and for an award of attorneys' fees and costs pursuant to California's Anti-Strategic Litigation Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure § 425.16.  Dkt. No. 45.

    All named parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 5, 9.  The Court heard oral argument on Mr. Dorfman's motions on January 21, 2020.  Dkt. No. 51.  Having considered the parties' briefs and arguments made at the hearing, the Court: (1) grants the motion to dismiss without leave to amend; (2) denies the request for judicial notice as moot; and (3) grants

*United States District Court*
*Northern District of California*

1   the anti-SLAPP motion.

2   **I.      BACKGROUND[1]**

3          Peak Health is a developer, seller, and distributor of plant-based pharmaceuticals and

4   supplements with an office in California.  Dkt. No. 37 ¶ 1.  Peak Health says that one of its

5   principals developed a strain of *Humulus yunnanensis*, a hops plant, as a source of cannabidiol

6   ("CBD"), a substance typically derived from hemp or cannabis and used to treat various medical

7   conditions.  *Id.* ¶ 13.  Because hemp and cannabis are subject to legal restrictions and social

8   stigma, the ability to obtain CBD from another source—such as a legal hops plant—is highly

9   valuable.  *See id.*  Peak Health purports to be the sole source of CBD derived from *Humulus*

10  *yunnanensis* and sells CBD-based products under various trademarks, including "Kriya" and

11  "ImmunAG."  *Id.*

12         At the time of the events described in the amended complaint, Mr. Dorfman was the editor-

13  in-chief and a writer for PotNetwork Holdings, Inc. ("PotNetwork"), a company that produces and

14  distributes cannabis and hemp products (including CBD products) and that also publishes news

15  concerning the cannabis and hemp industries on its website.  *Id.* ¶ 3.  In early 2019, Mr. Dorfman

16  contacted Peak Health principal Bomi Joseph for an article Mr. Dorfman planned on writing,

17  which Peak Health says was intended to disparage Peak Health, a PotNetwork competitor.  *Id.* ¶¶

18  4, 14.  Mr. Dorfman questioned Mr. Joseph's background and the origin and source of the CBD

19  used in Peak Health's products.  *Id.*  Peak Health described Mr. Dorfman's demeanor as

20  demonstrating "disdain and animus towards Mr. Joseph."  *Id.* ¶ 15.  Mr. Joseph directed Peak

21  Health's public relations agency to provide Mr. Dorfman with documents that were "proof" that

22  Peak Health's CBD originated from *Humulus yunnanensis* plants grown in India and that an

23  independent laboratory had tested and verified Peak Health's CBD as not derived from cannabis or

24  hemp, as well as Mr. Joseph's patent filings for inventions related to *Humulus yunnanensis*.  *Id.* ¶¶

25  14, 16.

26  _____

27  [1] Unless otherwise noted, the following factual allegations are taken from the SAC, and they are
    accepted as true for purposes of the motion to dismiss.  *See Reese v. BP Exploration (Alaska) Inc.*,

28  643 F.3d 681, 690 (9th Cir. 2011).

United States District Court
Northern District of California

On February 22, 2019, Mr. Dorfman published an article on the PotNetwork website entitled, "*A PotNetwork News investigative report: Bomi Joseph's 'hops-derived' CBD was a world-changing cannabis alternative fought over by Isodiol and Medical Marijuana, Inc. But he lied about his discovery—and his identity*" ("the article"), which is attached as Exhibit A to the SAC. *Id.* ¶ 4. In the article, Mr. Dorfman writes that Peak Health's and Mr. Joseph's claims about Peak Health products were inaccurate and fraudulent. *Id.* ¶ 18. The article asserts that CBD derived from hops is fiction and that Peak Health's "*Humulus kriya*" hops plant does not exist.[2] *Id.*, Ex. A at 3, 5, 11–12. The article also includes statements about Mr. Joseph personally: that his real name is Moses Sunith Prasad Joseph, that Mr. Joseph's publications about *Humulus kriya* and CBD were plagiarized from others' legitimate peer-reviewed publications, that he is a convicted felon who served prison time for defrauding various banks of $20 million in the early 2000s, and that he pled guilty in January 2019 to using a false name on a passport application. *Id.* at 2–3, 7–12.

In its SAC, Peak Health challenges the same seven statements to which it objected in its first amended complaint ("FAC"). *Compare id.* ¶¶ 20-21 *with* Dkt. No. 8 ¶¶ 20-21. Peak Health identifies the following three statements as either false or made with reckless disregard for the truth:

- Statement 1: "The discovery of cannabidiol from Humulus kriya is a fraudulent one, based on plagiarized research and outright deception." Dkt. No. 37 ¶ 20(A).

- Statement 2: "Mr. Joseph claimed to have found the world's first alternative source of highly-bioactive CBD through his organization, Peak Health Center in Los Gatos, California, deceit that garnered him favorable press, speaking engagements, and financial gain. In fact, based on his plagiarized research and dubious claims, Mr. Joseph secured himself deals with two publicly-traded companies in the cannabis sector, Isodiol and Medical Marijuana Inc." *Id.* ¶ 20(B).

- Statement 3: "This time around [Mr. Joseph] may very well have stolen from little old ladies, or the sick and injured—from anyone who purchased ImmunAg or Real

---

[2] The article explains this assertion as follows: "The designation *Humulus kriya* itself is a falsehood . . . . The correct writing would be Humulus yuannenis [sic] var. 'Kriya,' but only if the variety is registered officially can one add 'var. Kriya.' . . . .[W]hen Mr. Joseph wrote *Humulus kriya*, he mislead the public, as his variety is neither a species and very probably not a registered variety." *Id.*, Ex. A at 5.

Scientific Humulus Oil or one of its derivatives in hopes of curing some pain." *Id.* ¶ 20(C).

In addition, Peak Health identifies four statements, all of which quote Dr. Volker Christoffel (one of the researchers whose work Mr. Joseph allegedly plagiarized), as made maliciously or with reckless disregard for the truth:

- Statement 4: "'The whole story with CBD from hop is insane,' Dr. Christoffel told PotNetwork via email. 'By the phylogenetic relatedness it MIGHT be possible, that some hop varieties may have genes and express i.e., form cannabinoids—the biochemical pathways are not so different and there is a theoretical possibility I would not exclude a priori. BUT these are definitively only traces.'" *Id.* ¶ 21(D).

- Statement 5: "Point blank, Dr. Christoffel stated that hops, or Humulus kriya, does not have enough traces of CBD to make it a viable product." *Id.* ¶ 21(E).

- Statement 6: "'There is nothing, nothing worth,' [Dr. Christoffel] continued. 'It is just marketing to drive their shares.'" *Id.* ¶ 21(F).

- Statement 7: "And as Dr. Christoffel told PotNetwork News via email, the idea of bioactivity sold by Mr. Joseph would seem to be a canard." *Id.* ¶ 21(G).

Peak Health says that reliance on Dr. Christoffel was reckless and misguided, because Dr. Christoffel never performed or reviewed any kind of chemical analysis on Peak Health's *Humulus yunnanensis*-derived CBD. *Id.* ¶¶ 21(D), 22-24. Moreover, Peak Health says, the article fails to disclose the fact that Dr. Christoffel is a managing director of yet another cannabis-based pharmaceutical company that competes with Peak Health and is therefore not an independent expert as the article implies. *Id.* ¶ 24.

Peak Health contends that the article was intended to harm its commercial interests, and that Mr. Dorfman's purpose in publishing it was commercial, not journalistic. *Id.* ¶ 26. Because of the article, Peak Health says it suffered harm to its reputation and lost business opportunities worth at least $10 million—specifically, Peak Health asserts that it had pending contracts with Kannaway/Marijuana Inc., Golden Leaf Holdings, and Full Impact LLC, who refused to pay Peak Health for products received or withdrew from the contracts after the publication of the article, causing Peak Health to lose $1.2 million per contract. *Id.* ¶¶ 29-38.

Mr. Dorfman filed his motion to dismiss the SAC and his anti-SLAPP motion on December 17, 2019. Dkt. Nos. 44, 45. Peak Health's responses were due on December 31, 2019.

Civ. L.R. 7-3(a).  However, Peak Health did not file its opposition briefs until January 3, 2019.

Dkt. Nos. 47, 48.  Peak Health's counsel submitted a declaration stating that he had been in trial

between December 16 and 19 and his assistant failed to notify him that the pending motions had

been filed.  Dkt. No. 49 ¶¶ 3-4.  Counsel then left for vacation between December 22 and January

1, during which he became ill.  *Id.* ¶ 5.  He states that he did not become aware of the pending

motions until January 1, 2020.  *Id.* ¶ 6.  Peak Health did not seek an extension of its deadline to

oppose the motions.  *See* Civ. L.R. 6-1(b), 6-3.

Peak Health has not shown good cause for excusing counsel's lack of diligence.  However,

as Mr. Dorfman does not assert that he has suffered any prejudice as the result of Peak Health's

late-filed opposition briefs, the Court will consider Peak Health's opposition briefs in the interest

of deciding the motions on their merits.  *See, e.g.*, *Koop v. Amco Ins. Co.*, No. 16-cv-01963-LB,

2016 WL 3500121, at *2 (N.D. Cal. June 27, 2016) (considering late-filed brief because opposing

party identified no resulting prejudice).

## II.      LEGAL STANDARD

### A.      Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

*Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

as true all well-pled factual allegations and construes them in the light most favorable to the

plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  While a

complaint need not contain detailed factual allegations, it "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

facially plausible when it "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*

Documents appended to the complaint, incorporated by reference in the complaint, or

which properly are the subject of judicial notice may be considered along with the complaint when

United States District Court
Northern District of California

deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). A court may take notice of public records, but not of disputed facts stated in public records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

### B.     Rule 9(b)

Rule 9(b) requires that allegations of fraud be stated with particularity. Specifically, averments of fraud must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When an "entire claim within a complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107. A motion to dismiss a complaint under Rule 9(b) for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### C.     Anti-SLAPP Motion to Strike

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (quotation marks and citation omitted). California's anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that

6

1  the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).  A defendant in

2  federal court may bring an anti-SLAPP motion with respect to California state law claims asserted

3  under either diversity jurisdiction or supplemental jurisdiction.  *Jen v. City & Cty. of San*

4  *Francisco*, No. 15-CV-03834-HSG, 2016 WL 3669985, at *11 (N.D. Cal. July 11, 2016).  The

5  anti-SLAPP statute does not apply to claims asserted under federal law.  *Hilton v. Hallmark*

6  *Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

7  **III.    REQUEST FOR JUDICIAL NOTICE**

8          When resolving a motion to dismiss for failure to state a claim, a court's review is

9  generally limited to the four corners of the complaint.  *Allarcom Pay Television. Ltd. v. Gen.*

10  *Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).  However, a court may look to exhibits

11  attached to the complaint and documents incorporated by reference into the complaint.  *See Hal*

12  *Roach Studios*, 896 F.2d at 1555 n.19; *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

13  980 (9th Cir. 2002).  Documents upon whose contents the complaint necessarily relies—even if

14  the complaint does not explicitly allege their contents—and whose authenticity and relevance are

15  uncontested, are considered incorporated by reference.  *See Coto Settlement v. Eisenberg*, 593

16  F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).  The

17  Court may, in addition, take into account material that is properly the subject of judicial notice.

18  *Khoja*, 889 F.3d at 998.  Judicial notice may be taken of a fact not subject to reasonable dispute

19  because it either is generally known within the trial court's territorial jurisdiction, or readily can be

20  determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

21          Mr. Dorfman asks the Court to take judicial notice of the following documents in support

22  of his motion to dismiss and his anti-SLAPP motion: (1) a Peak Health press release dated March

23  19, 2018; (2) a Peak Health press release dated June 14, 2018; (3) a Peak Health press release date

24  February 13, 2019; (4) various Internet articles concerning Peak Health and Mr. Joseph; and (5)

25  excerpts of the transcript of the October 29, 2019 hearing before the Court in this action.  Dkt. No.

26  46-1, Exs. 1-5.  Peak Health objects to Mr. Dorfman's request on three grounds: (1) the Court

27  lacks the authority to judicially notice the documents; (2) the documents contain hearsay and lack

28  authentication, and (3) no foundation exists for the Court to take judicial notice.  Dkt. No. 47 at 8;

United States District Court
Northern District of California

7

Dkt. No. 48 at 8.

The Court finds that it need not rely on the documents for which Mr. Dorfman requests notice in order to decide the motion to dismiss and anti-SLAPP motion to strike.  Accordingly, the Court denies Mr. Dorfman's request for judicial notice and denies Peak Health's objections as moot.

## IV.    MOTION TO DISMISS

Mr. Dorfman moves to dismiss the SAC on the following grounds: (1) as a limited-purpose public figure, Peak Health fails to adequately plead that Mr. Dorfman acted with actual malice; (2) the challenged statements are not actionable under the First Amendment because they are subjective interpretations of fully disclosed and unchallenged facts; and (3) the SAC fails to meet the heightened pleading standard of Rule 9(b) by adequately pleading falsity.  Dkt. No. 44.

### A.    Actual Malice

Mr. Dorfman moves to dismiss all claims in the SAC under Rule 12(b)(6) based on the argument that Peak Health is a limited-purpose public figure that must satisfy a heightened pleading standard of actual malice.  Dkt. No. 44 at 20–24.  Although Peak Health appears not to contest its status as a limited-purpose public figure, it objects to this ground for dismissal on the basis that Mr. Dorfman could have raised it on his previous motion to dismiss the FAC but did not.  Dkt. No. 47 at 7–8.

Federal Rule of Civil Procedure 12(g)(2) provides, with exceptions that do not apply here: "[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  In other words, "a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017). Instead, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense pertaining to a failure to state a claim that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial.  *Id.*; *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 984–85 (N.D. Cal. 2017).

1    At the hearing, Mr. Dorfman acknowledged that he could—and should—have raised his

2  actual malice argument earlier, but he chose not to do so in favor of other arguments he believed

3  were more significant.  Because the allegations of the SAC do not differ substantially from those

4  of the FAC, and because the actual malice argument was available to Mr. Dorfman during his

5  previous motion to dismiss, the Court finds that Rule 12(g)(2) does not permit Mr. Dorfman to

6  raise that argument on his second motion to dismiss.  *Hernandez*, 241 F. Supp. 3d at 985 (ruling

7  that defendants may not raise immunity defense for the first time in a second-round motion to

8  dismiss when defense was reasonably available to defendants at the time of the first motion to

9  dismiss); *Ojmar US, LLC v. Security People, Inc.*, No. 16-cv-04948-HSG, 2017 WL 5495912, at

10  *4 (N.D. Cal. Nov. 16, 2017) (same).

11    Accordingly, the Court does not consider Mr. Dorfman's actual malice argument.

12    **B.     First Amendment**

13    As he did in his earlier motion to dismiss the FAC, Mr. Dorfman contends that the First

14  Amendment protects the entire article because it contains opinions or subjective interpretations

15  based on fully disclosed facts.  Dkt. No. 44 at 10–20.  The Court previously held that challenged

16  statements 3, 6, and 7 qualify for First Amendment protection as rhetorical characterizations or

17  statements of opinion, but that statements 1, 2, 4, and 5 could not be so easily disposed of, as they

18  appeared to include or imply assertions of fact.  Dkt. No. 36 at 13–17.  In so finding, the Court

19  particularly noted the context of the article, which is presented as a work of investigative

20  journalism, rather than the personal viewpoint of its author.  Read in context, the Court concluded

21  that aspects of statements 1, 2, 4, and 5 are capable of being proved true or false.  *Id.*

22    Mr. Dorfman again argues that the article reflects his opinion or subjective interpretation of

23  objective facts, and that his full disclosure of the facts upon which that opinion or interpretation

24  relies qualifies the entire article for First Amendment protection.  Dkt. No. 44 at 10–20.  However,

25  a recitation of underlying facts does not automatically immunize any statement that follows, just

26  as labeling a statement "opinion" or "interpretation" does not render it impervious to challenge.  A

27  statement that contains or implies a false assertion of fact is actionable even if it is couched as a

28  statement of "opinion."  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990); *see also*

United States District Court
Northern District of California

9

*Liberman v. Fieger*, 338 F.3d 1076, 1079 (9th Cir. 2003) ("Among other protections, the First Amendment shields statements of opinion on matters of public concern that do not contain *or imply* a provable factual assumption.") (emphasis added); *Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995) ("Even in contexts in which the general tenor of the work suggests that the author is expressing personal opinions, it is possible that a particular statement of opinion may imply a false assertion of objective fact and therefore fall outside the scope of the First Amendment's protection as limited by *Milkovich*.").

Following the Supreme Court's decision in *Milkovich*, the "threshold question" is "whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Gardner*, 563 F.3d at 987 (internal quotations omitted). The Ninth Circuit has adopted a three-part test for resolving this question: "(1) whether the general tenor of the entire work negates the impression that the defendant [is] asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.* (citing *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)).

Applying this test, the Court previously concluded that, although the general tenor of the article would reasonably create an expectation that it contained assertions of fact based on evidence obtained through an investigation, Mr. Dorfman's use of hyperbolic language and subjective characterizations weighed in favor of First Amendment protection for certain challenged statements. Dkt. No. 36 at 14–15. The Court reaffirms that conclusion here. Specifically, statement 3 that Mr. Joseph "may very well have stolen from little old ladies, or the sick and injured" plays off of the preceding quote from Mr. Joseph's criminal defense attorney that Mr. Joseph did not "[take] money from little old ladies," and amounts to rhetorical hyperbole. Dkt. No. 37, Ex. A at 12. Likewise, the quoted remarks of Dr. Christoffel in parts of statements 4, 5, 6, and 7 that "[t]he whole story with CBD from hop[s] is insane," that Peak Health's claims about its products are "nothing worth" and "seem to be a canard," and that a hops plant could not produce enough CBD to make a "viable product" are subjective and colorful expressions of opinion. Dkt. No. 37 ¶ 21(D)-(G). Similarly, parts of statements 1 and 2, describing the concept

10

of CBD from hops as "fraudulent," "dubious," and based on "plagiarized research," are also subjective statements of opinion or interpretation.  *Id.* ¶ 20(A)-(B).

However, aspects of challenged statements 1, 2, 4 and 5, when read in the context of the entire article, do not receive First Amendment protection as a matter of law.  As the Court explained in is earlier order, these statements at the very least imply that the CBD in Peak Health's products does not truly originate from a hops plant, and such implicit assertions are capable of being proved true or false.  *Id.* at 15.  Mr. Dorfman argues that even an investigative news article such as his can contain a "subjective summary of the facts presented."  Dkt. No. 44 at 16 n.5.  That may be so, but only if the statements are, in fact, presented as expressions of opinion or subjective interpretations of fact.  They are not so presented here.

The authority on which Mr. Dorfman relies does not support a different conclusion.  For example, Mr. Dorfman relies on *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), in which the Fourth Circuit considered a newspaper article that "pointedly questioned the finances of" the plaintiff's fundraising program and "wondered aloud 'where the rest of the money goes.'" *Id.* at 1091.  The Fourth Circuit held that these statements were not actionable because the article as a whole contained "expressions of uncertainty" and "a story constructed around questions, not conclusions."  *Id.* at 1098.  The article included favorable and unfavorable views of the plaintiff's fundraising program, "but does not ultimately adopt any particular answer as correct.  From this, a reasonable reader would not be likely to conclude that one answer is true and the other false."  *Id.* Likewise, in *Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir. 1978), on which Mr. Dorfman also relies, the Sixth Circuit considered a newspaper article concerning the plaintiff's arrest and indictment for violations of securities laws.  The Sixth Circuit held that the newspaper's description of the plaintiff's activities as a "fraud" and "alleged swindle" were not actionable because such statements were characterizations that could not be proven true or false.  *Id.* at 1112. By contrast, Mr. Dorfman's article does not merely raise questions about the provenance of the CBD in Peak Health's products or describe that subject in a hyperbolic or subjective matter; rather, it implicitly asserts that Peak Health falsely claims that its CBD is derived from a hops plant.

Mr. Dorfman also relies on *Ayaadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343 (D. Mass. 2017).  In that case, the plaintiff sued the operator, editor, and writer of a website that posted several articles asserting that the plaintiff falsely claimed to be the inventor of e-mail.  *Id.* at 349.  The court determined that the challenged statements could not be proved true or false because whether the plaintiff actually was the inventor of e-mail depended in substantial part on the definition of "e-mail," which the parties hotly contested.  *Id.* at 358–59.  Here, the assertions that Peak Health challenges in statements 1, 2, 4, and 5—that the CBD in its products does not come from a hops plant—do not depend on resolution of such ambiguities.[3]

Mr. Dorfman stresses that Peak Health does not challenge any of the underlying facts in the article as false, but that is not an accurate characterization of Peak Health's position, and even if it were, it is not dispositive.  Peak Health *does* challenge the assertion that its products do not contain CBD derived from a hops plant.  Its failure to challenge other statements in the article does not compel a finding that the challenged assertion is protected.  Moreover, the implied assertions in statements 1, 2, 4, and 5 are not like those in *Gardner*, where the statements at issue were clearly speculation based on the limited facts available.  *See Gardner*, 563 F.3d at 988 (talk show host's challenged statements included "they're lying to you" and "Will they admit to us that they . . . went back on their word?" in response to on-air customer story).  To the contrary, nothing in the article suggests that Mr. Dorfman is merely speculating.  The article refers repeatedly to "evidence," which serves to bolster rather than undermine the impression that the article is a piece of investigative journalism that is intended to communicate objective statements of fact.  Dkt. No. 12, Ex. A at 2, 3, 8.  Considering the article's full context, the Court is not persuaded that the First Amendment protects the implied assertion of fact in challenged statements 1, 2, 4, and 5 as a matter of law.

---

[3] Mr. Dorfman also cites *Lassiter v. Lassiter*, 456 F. Supp. 2d 786 (E.D. Ky. 2006), but that case is inapposite.  The author self-published a book during her acrimonious divorce alleging that her husband physically abused her and had affairs.  The district court found that, considering its context, a reader was unlikely to expect the book to provide an objective perspective, and further found that the statements were not actionable where the author disclosed that her view was informed by rumors and circumstantial evidence, which she chose to credit.  *Id.* at 882.  Such a publication has little in common with Mr. Dorfman's purported investigative reporting.

Accordingly, the Court grants in part and denies in part Mr. Dorfman's motion to dismiss based on the First Amendment as follows:  To the extent Peak Health's claims rely on statements 3, 6, and 7, the Court has already held that those statements are protected under the First Amendment and are not actionable.  To the extent Peak Health's claims rely on the implied assertion in statements 1, 2, 4, and 5 that the CBD in Peak Health's products does not originate from a hops plant, the Court concludes that those assertions are not protected under the First Amendment as a matter of law.

### C.    Rule 9(b) Pleading Standard

The Court previously concluded that all of Peak Health's claims sound in fraud and therefore must meet the heightened pleading standard of Rule 9(b).  Dkt. No. 36 at 17–18.  The FAC did not meet this standard, as Peak Health failed to plead facts showing why the challenged statements are false or misleading.  *Id.*  The Court's order dismissing the FAC granted Peak Health leave to amend to plead specific facts including, among other things, "[f]acts from which it can be inferred that the challenged statements in the article are false or misleading."  *Id.* at 19.  Mr. Dorfman contends that the SAC, like the FAC, fails to plead the necessary facts showing why the challenged statements are false or misleading, and he argues that the SAC should be dismissed on this ground.  Dkt. No. 44 at 8–10.

The Court agrees with Mr. Dorfman.  With respect to statements 1 and 2, the SAC relies on bare contradiction: the SAC excerpts the challenged statement and then alleges that the statement is false.  Dkt. No. 37 ¶ 20(A) ("This statement is false because Plaintiff's discovery of cannabidiol from Kriya brand humulus is not a fraudulent one.  Plaintiff's discovery of cannabidiol from Kriya brand humulus is a reality and true.  Also, the discovery of cannabidol from humulus is not based on plagiarized research and it is not a deception, but it is reality."); Dkt. No. 37 ¶ 20(B) ("This statement is false because Mr. Joseph's claim to have found the world[']s first alternative source of highly-bioactive CBD through his organization, Peak Health[,] is true and is not based in deceit.  Also, the press and speaking engagements and financial gain that Mr. Bomi has received is not based on deceit, but instead based on the truth.  Also, the research done by Mr. Bomi was not plagiarized, as alleged by Defendant.").  These conclusory denials do not

comply with the Court's order, which required Peak Health's amended pleading to state *facts* from which it may be inferred that the challenged statements are false or misleading.  Dkt. No. 36 at 19.  The SAC does not plead any such facts as to statements 1 and 2.

With respect to statements 4 and 5, the SAC includes the following allegations:

> Plaintiff had an analysis done on Kriya® humulus from a third party independent Alkemist Lab.  It shows 5.359% CBD in Kriya® brand humulus and "No Detectabale [sic]" THC even at an extremely low threshold of 0.0001%.  This is a significant amount of CBD and DOES make it a viable product.  More significantly, a non-scheduled plant- a Humulus species contains no THC and 5.359% is remarkable.

*Id.* ¶ 21(D).  When asked at the hearing whether "Kriya® brand humulus" refers to a Peak Health *product* containing CBD or to the *Humulus yunnanensis* hops plant itself, Peak Health's counsel replied that it referred to a Peak Health product, not the hops plant.  Accepting that representation and all allegations in the SAC as true, the SAC's allegations do not support an inference that challenged statements 4 and 5 are false.  If credited, they establish only that Peak Health's products contain CBD and no detectable THC, and that some hops plant (it is not clear which one) contains no THC.  The allegations say nothing about the key assertion in dispute—i.e., whether the CBD in Peak Health's products originated from a hops plant.  Indeed, the SAC's allegations are entirely consistent with the possibility that Peak Health purchased CBD from other sources and used it in its products instead of using CBD derived from a hops plant, as the article suggests.  *See, e.g.*, Dkt. No. 37, Ex. A at 6 (discussing Mr. Joseph's purchases of large quantities of CBD isolate despite purportedly having his own hops manufacturing plant in India).  For these reasons, the SAC does not plead facts from which it may be inferred that challenged statements 4 and 5 are false or misleading.

Accordingly, the Court grants Mr. Dorfman's motion to dismiss based on Peak Health's failure to meet the heightened pleading standard of Rule 9(b) with respect to statements 1, 2, 4, and 5.

### D.    Leave to Amend

Peak Health did not include a request for leave to amend in its opposition brief but did request such leave at the hearing on Mr. Dorfman's motion to dismiss the SAC.  Peak Health

asserted that it could allege that its products have been tested and that those tests revealed that its products contained CBD and no THC.  But Peak Health already pled these facts in paragraph 21(D) of the SAC, and as explained above, those facts do not support an inference that the challenged statements are false.  *See supra* Section IV.C.

Peak Health has already had two opportunities to amend its complaint and has been unable to satisfy Rule 9's pleading standard on both occasions.  The Court's order dismissing the FAC expressly informed Peak Health that its amendment must include "[f]acts from which it can be inferred that the challenged statements in the article are false or misleading."  Dkt. No. 36 at 19. As Peak Health has not explained how it would cure the deficiencies in the SAC if it were given leave to amend yet again, the Court is persuaded that leave to amend is not warranted and would be prejudicial to Mr. Dorfman.  *Leadsinger, Inc. v. BMF Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) ("The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Gardner*, 563 F.3d at 991 (finding no abuse of discretion where district court denied plaintiffs' request to amend the FAC because plaintiffs "did not propose any new facts or legal theories for an amended complaint and therefore gave the Court no basis to allow an amendment").

Accordingly, the Court denies Peak Health's oral request for leave to amend.

## V.     ANTI-SLAPP MOTION TO STRIKE

Mr. Dorfman moves to strike Peak Health's SAC pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  Dkt. No. 45.

### 1.     Anti-SLAPP analysis

"The analysis of an anti-SLAPP motion proceeds in two steps."  *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 321 (2017) (quotation marks and citation omitted).  At step one, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  *Id.* (quotation marks and citation omitted).  Under the California

United States District Court
Northern District of California

15

anti-SLAPP statute, protected activity is "any act . . . in furtherance of [a] person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc. § 425.16(b)(1), (e)(3)-(4).

At step two, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.* at 396.  The Court "will review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed. of Am., Inc. v. Center for Medical Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  If the plaintiff ultimately fails to meet its burden at the second step, the claim based on protected activity is stricken and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

### a.     Step one

Here, at step one, Mr. Dorfman argues that his article constitutes a "writing made in . . . a public forum in connection with an issue of public interest," or an act "in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." Dkt. No. 45 at 8–10 (citing Cal. Civ. Proc. Code § 415.16(e)(3), (4)).  Peak Health does not address this argument in its opposition brief and thus appears to concede the issue. *See* Dkt. No. 48.  In any event, the article clearly meets the statutory requirement for protected activity because it is a writing made in a public forum in connection with an issue of public interest.

Mr. Dorfman's article was published on PotNetwork's news website, a publicly accessible website that purports to provide independent news about the cannabis and hemp industries.  Dkt. No. 8 ¶¶ 3-4.  Such sites are "public forums" for purposes of the anti-SLAPP statute. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006).  Peak Health does not dispute that the quality and content

16

1    of its CBD products—particularly where such products are supposed to be derived from a hops

2    plant—are matters of public interest.  *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042

3    (2008) (quality and contents of consumer goods are matters of public interest); *Melaleuca, Inc. v.*

4    *Clark*, 66 Cal. App. 4th 1344, 1363 (1998) (same); *see also Makaeff v. Trump Univ. LLC*, 715

5    F.3d 254, 262 (9th Cir. 2013) ("Under California law, statements warning consumers of fraudulent

6    or deceptive business practices constitute a topic of widespread public interest, so long as they are

7    provided in the context of information helpful to consumers.").

8         Accordingly, the Court finds that Mr. Dorfman has made a threshold showing that Peak

9    Health's claims arise from protected activity within the meaning of the anti-SLAPP statute.

10                            **b.    Step two**

11        At step two, Peak Health has not met its burden of showing a probability of success on any

12   of its claims.  As discussed above, Peak Health has not stated claims for relief that meet the

13   requirements of Rule 12(b)(6) or Rule 9(b), and it cannot show a probability of success on the

14   merits.  *See Planned Parenthood*, 890 F.3d at 834; *see also Vess*, 317 F.3d at 1110 (affirming

15   district court's dismissal with prejudice under Rules 9(b) and 12(b)(6), "[t]hus, Vess cannot

16   demonstrate a 'probability that [he] will prevail on [his] claim'"); *Resolute Forest Prods., Inc. v.*

17   *Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017) (finding because plaintiff failed to

18   plead plausible claim under Rule 12(b)(6) standard, plaintiff could not show probability of success

19   on the merits).

20        Accordingly, because Mr. Dorfman has shown that Peak Health's claims derive from

21   protected activity, and Peak Health has not shown that it will probably prevail on the merits, the

22   Court grants Mr. Dorfman's motion to strike.

23                        **2.    Attorneys' fees and costs**

24        "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or

25   her attorney's fees and costs."  Cal. Civ. Proc. Code § 415.16(c)(1).  An award of fees and costs

26   for a successful anti-SLAPP motion is mandatory.  *Resolute Forest*, 302 F. Supp. 3d at 1016–26.

27   If a court finally dismisses a claim without leave to amend, the court ordinarily must proceed to

28   consider an anti-SLAPP defendant's claim for attorneys' fees.  *See Collins v. Allstate Indemnity*

United States District Court
Northern District of California

17

*Co.*, 428 F. App'x 688, 690 (9th Cir. 2011) (finding district court erred in dismissing anti-SLAPP motion as moot after dismissing complaint under Rule 12(b)(6) without leave to amend); *ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441, 445–46 (9th Cir. 2017) ("[I]f the district court grants the anti-SLAPP motion, it should consider whether attorney's fees are proper and it should do so even if it also grants a motion to dismiss."); *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) (proceeding to anti-SLAPP analysis "[b]ecause the issue of attorney fees and costs is not rendered moot by a dismissal").

The Court has dismissed all of Peak Health's claims without leave to amend under Rule 12(b)(6) and 9(b) and has also stricken Peak Health's claims under the anti-SLAPP statute.  Mr. Dorfman is therefore entitled to recover the attorneys' fees and costs he incurred in moving to strike the claims on which he prevailed.  *Resolute Forest*, 302 F. Supp. at 1027 (citing *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2013 WL 6234628, at *10 (N.D. Cal. Dec. 2, 2013)).  At this time, the Court reserves judgment regarding whether an award may encompass fees and costs incurred with respect to Mr. Dorfman's first motion to strike as well as his second.  *See Manufactured Home Communities, Inc. v. Cty. of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011) (affirming district court's award of attorneys' fees on first and second anti-SLAPP motion, where initial motion "laid the groundwork" for a successful second motion after remand and was "integral" in achieving defendants' objective).

On or before **March 9, 2020**, Mr. Dorfman may file a motion not to exceed 10 pages in support of his request for an award of attorneys' fees and costs.  Such motion must be supported by a declaration or other evidence establishing the amount of fees and costs requested.[4]  Peak Health may file a response to Mr. Dorfman's motion, not to exceed 10 pages, no later than 14 days following Mr. Dorfman's motion.  No reply brief is permitted.  Alternatively, the parties may stipulate to the amount of attorneys' fees and costs and so advise the Court by **March 9, 2020**.

---

[4] If Mr. Dorfman wishes to rely on billing statements to support the attorneys' fees claimed, and if those statements would reveal privileged information, he may lodge such statements with the Court for in camera review and file a notice of lodging.

United States District Court
Northern District of California

## VI.   CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss all claims against Mr. Dorfman without leave to amend.  The Court also grants Mr. Dorfman's anti-SLAPP motion to strike.

The case management conference scheduled for March 17, 2020 is hereby VACATED.

**IT IS SO ORDERED.**

Dated: February 24, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge